Filed 5/5/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| ELEANOR MOSES,<br><br>    Plaintiff and Appellant,<br>v.<br><br>PASCALE ROGER-MCKEEVER,<br><br>    Defendant and Respondent. | A164405<br><br>(Alameda County<br>Super. Ct. No. RG20050056) |

Plaintiff Eleanor Moses slipped and fell on a walkway outside the condominium rented by defendant Pascale Roger-McKeever after attending an event hosted by Roger-McKeever. Moses filed a complaint against Roger-McKeever for premises liability. After the trial court granted Roger-McKeever's motion for summary judgment, Moses appealed. We conclude that Moses did not raise a triable issue of material fact as to whether Roger-McKeever owed her a duty of care to protect her against the allegedly dangerous condition of the walkway. For that reason, we affirm the judgment.

## I. BACKGROUND

On the evening of February 3, 2018, Roger-McKeever hosted a small gathering for members of a political activist group at a condominium she rented in Albany. Moses was one of the attendees. Two years later, in January 2020, Moses filed a personal injury complaint for a slip and fall that allegedly occurred on or near the entryway steps to Roger-McKeever's

1

condominium that night.[1]  Moses alleged in the complaint that while she was on the premises on February 3, 2018, Roger-McKeever was aware of—or should have been aware of—and negligently allowed a dangerous condition to exist causing Moses to suffer serious injuries.

In April 2021, Roger-McKeever filed a motion for summary judgment on the ground that Moses could not establish one or more elements of her premises liability claim.  Roger-McKeever first argued that she did not owe a legal duty to Moses because the slip and fall occurred in a common area or on the public sidewalk, areas that were not under Roger-McKeever's responsibility or control.  She further contended that, even if her legal duty extended to the area where the slip and fall occurred, she could not be held liable because she did not have actual or constructive notice of the allegedly dangerous condition that caused the fall.  In particular, she had no involvement in the construction, maintenance, or repair of the walkway.  Moreover, she had been living at the condominium for several years and the walkway steps had been in regular use during that time by numerous guests, yet no one had ever complained to her about the condition of the steps or the lighting in the entryway.  Finally, Roger-McKeever argued that there was no evidence that she acted or failed to act so as to cause Moses's injuries.  Roger-McKeever supported her motion with her declaration and excerpts from the depositions of two individuals who also attended the February 3 meeting and whose testimony indicated that the walkway was not noticeably dark that night.

_____

[1] Moses also brought this action against the owners of the condominium and Carapace Ten Homeowners Association.  However, this is an appeal from an order granting a summary judgment motion brought by Roger-McKeever, and thus we focus on the allegations concerning her.

In opposition, Moses argued that there were genuine issues of material fact as to whether Roger-McKeever was on actual or constructive notice that the stairs leading up to her condominium was in an unsafe condition, and therefore Roger-McKeever owed a duty of care to Moses. In support, Moses provided her declaration stating that, upon her arrival to Roger-McKeever's condominium, she mentioned to Roger-McKeever that the entryway was dark. Roger-McKeever acknowledged the issue and "was apologetic indicating that there was an electrical problem with the porch light." According to Moses's declaration, Roger-McKeever explained that her landlord had not been responsive in repairing the light. A photograph attached to the declaration depicted three steps leading up and away from a street sidewalk and to a short walkway that ended at a door to Roger-McKeever's condominium (the entryway or walkway). Moses stated in her declaration that when she was leaving the condominium, she was not able to see the second step and lost her footing and fell. She also provided a declaration from a mechanical engineer, who opined that the steps were "grossly" out of compliance with applicable building code, and that the absence of a handrail and the riser heights of the steps were probable causes of the accident.

In reply, Roger-McKeever argued that Moses's evidence that the lighting was inadequate was at best in "equipoise" to Roger-McKeever's evidence on that issue, and thus Moses did not sufficiently raise a triable issue of material fact. She further asserted that Moses failed to point to any element of the entryway or the entryway steps that would have put a reasonable person on notice of an unreasonable risk. And she claimed that the declaration of the mechanical engineer was inadmissible.

3

In October 2021, the court granted Roger-McKeever's summary judgment motion. The court found that Roger-McKeever made a prima facie showing that she was a tenant of the condominium who did not have control over the entryway steps or the outside lighting where Moses was injured, and thus she had no duty to maintain or repair that area. The court also concluded that Roger-McKeever did not have a duty to warn Moses because she did not have prior notice that the steps were a "non-obvious" dangerous condition of the premises "beyond the obvious danger of falls all stairways present." The court determined that Moses failed to present sufficient evidence to create a triable issue of material fact on those issues. Additionally, Moses did not present any legal authority for the proposition that a tenant in Roger-McKeever's position would have a duty to warn Moses of, or to remedy, the allegedly dangerous external conditions.

Moses appealed from the resulting judgment.

## II. DISCUSSION

The elements of a premises liability claim such as the one at issue in these proceedings are: a legal duty of care; breach of that duty; and proximate cause resulting in injury. (See *Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1158.) Here, Moses argues that the trial court erred in granting Roger-McKeever's summary judgment motion on the ground that she did not raise a triable issue of material fact showing that Roger-McKeever's legal duty of care extended to the walkway outside her condominium. Additionally, Moses asserts she raised a triable issue of material fact as to whether Roger-McKeever had actual or constructive knowledge of the lack of adequate lighting in the walkway. We find the scope of Roger-McKeever's duty of care dispositive and therefore affirm.

4

## A.  *Basis for Summary Judgment and Standard of Review*

Summary judgment is properly granted if "there is no triable issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)  "A defendant seeking summary judgment must show that the plaintiff cannot establish at least one element of the cause of action." (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618; see Code Civ. Proc., § 437c, subd. (p)(2).)  If the defendant makes this showing, "the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (p)(2).)

On appeal, we independently review an order granting summary judgment, " ' " 'considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.' " [Citation.]  We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.' " (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 286.)  Moreover, "[w]e must affirm a summary judgment if it is correct on any of the grounds asserted in the trial court, regardless of the trial court's stated reasons.  [Citation.]  Even if the grounds entitling the moving party to a summary judgment were not asserted in the trial court, we must affirm if the parties have had an adequate opportunity to address those grounds on appeal." (*Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 181.)

## B.  *The Existence of a Duty of Care and the "Control" Requirement*

Every person has a duty to exercise, "in the management of his or her property or person," reasonable care for the safety of others.  (Civ. Code,

5

§ 1714, subd. (a); see also *Vasilenko v. Grace Family Church* (2017) 3 Cal.5th 1077, 1083.) This duty is not absolute; a defendant generally does not have an affirmative duty to protect others when he or she has not created the peril or increased the risk of danger. (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 214–215.) " 'The proper test to be applied to the liability of the possessor of land in accordance with [Civil Code section 1714] is whether in the management of [one's] property [one] has acted as a reasonable [person] in view of the probability of injury to others.' " (*Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 672.) This duty is not limited to one who holds title over the land " 'but, rather, [is] owed by the person in possession of the land . . . because [of the possessor's] supervisory control over the activities conducted upon, and the condition of, the land.' " (*Alcaraz v. Vece* (1997) 14 Cal.4th 1149, 1157–1158 (*Alcaraz*).) To comply with this duty, the possessor of land must " ' " ' "inspect [the premises] or take other proper means to ascertain their condition" ' " ' and, if a dangerous condition exists that would have been discovered by the exercise of reasonable care, has a duty to give adequate warning of or remedy it." (*Staats v. Vintner's Golf Club, LLC* (2018) 25 Cal.App.5th 826, 833, fn. omitted.)

However, "[a] defendant cannot be held liable for the defective or dangerous condition of property which it [does] not own, possess, or control." (*Isaacs v. Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 134, overruled on other grounds in *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 678.) Thus, " '[a] tenant ordinarily is not liable for injuries to his invitees occurring outside the leased premises on common passageways over which he has no control. [Citations.] Responsibility in such cases rests on the owner, who has the right of control and the duty to maintain that part of the premises in a safe condition. It is clear, however, that if the tenant

6

exercises control over a common passageway outside the leased premises, he may become liable to his business invitees if he fails to warn them of a dangerous condition existing thereon.' " (*Alcaraz, supra*, 14 Cal.4th at p. 1158.) The " 'crucial element is control.' " (*Id.* at p. 1158, italics omitted.)

Roger-McKeever argues that the duty of care she owed Moses did not extend to the walkway because she did not own, possess, or control the walkway, which was outside the premises she leased. Moses argues, in contrast, that the evidence shows Roger-McKeever had control over the walkway, and, even if she did not have control, she still owed Moses a duty of care because she "impliedly adopted" the walkway by inviting Moses to her condominium. We conclude Roger-McKeever has the better argument.

### 1. *Control:* **Alcaraz** *and Related Cases*

In *Alcaraz*, our high court clarified the standard for determining when a party who does not own land has a duty to warn of or remedy dangerous conditions on that land, focusing on the requirement that a defendant "control" the area where the plaintiff's injury occurred. The case concerned a tenant who suffered injury when he stepped into a water meter box located in the lawn in front of the rental property he occupied. (*Alcaraz, supra*, 14 Cal.4th at p. 1152.) The landlord defendants did not own or control the meter box, and the city owned the narrow strip of land where the meter box was located. (*Id.* at pp. 1155–1157.) On appeal from summary judgment in favor of the defendants, the parties disputed whether the defendants exercised control over the narrow strip of land such that they had a duty of care to protect against dangerous conditions on that strip of land. (*Ibid.*) The evidence showed that the defendants maintained the lawn that covered the narrow strip of land and that they constructed a fence that enclosed the entire lawn, including the strip of land. (*Id.* at pp. 1161–1162.)

7

The court found that a triable issue of material fact existed as to whether the defendants exercised control over the strip of land, and that if the defendants did exercise control, they had a duty to protect or warn the plaintiff of the allegedly dangerous condition of the property. (*Alcaraz, supra*, 14 Cal.4th at p. 1170.) The court grounded its analysis in prior case law: "[T]he Courts of Appeal have recognized that a defendant's potential liability for injuries caused by a dangerous condition of property may be based upon the defendant's exercise of control over the property." (*Id.* at pp. 1157–1159.) "In common law parlance, the possessor of land is the party bearing responsibility for its safe condition[,]" and " '[p]ossession, in turn, is equated with occupancy plus control.' " (*Id.* at p. 1159.)

In determining what constituted "control," the court held that performing "minimal, neighborly maintenance of property owned by another" generally will not on its own constitute an exercise of control giving rise to a duty to protect or warn persons entering the property. (*Alcaraz, supra*, 14 Cal.4th at p. 1167.) It concluded, however, that the defendants' act of constructing a fence surrounding the strip of land at issue was sufficient to raise a triable issue of material fact on the issue of control because it showed that the defendants treated the strip of land "as their own" and "as an extension of their front lawn." (*Id.* at pp. 1162, 1168.)

The court cited with approval its prior decision in *Johnston v. De La Guerra Properties, Inc.* (1946) 28 Cal.2d 394 (*Johnston*), where one of the issues before the court was whether a tenant was liable for injuries the plaintiff sustained on an unlit walkway outside the tenant's leased premises that led to a side entrance to the building. (*Alcaraz, supra*, 14 Cal.4th at p. 1158, citing *Johnston*, at pp. 398, 401.) The tenant operated a restaurant in its leased portion of the building. (*Johnston, supra,* at p. 396.) The court

8

held that "[a] tenant ordinarily is not liable for injuries to his invitees occurring outside the leased premises on common passageways over which he has no control[,]" because in such cases, the owner "has the right of control and the duty to maintain that part of the premises in a safe condition." (*Id.* at p. 401.) The court further held, however, that "if the tenant exercises control over a common passageway outside the leased premises, he may become liable to his business invitees if he fails to warn them of a dangerous condition existing thereon." (*Ibid.*) In that case, there was evidence that the tenant had installed a neon sign with the name of his restaurant and had connected the sign to the only light placed on the outside wall above the side entrance such that the sign and the light operated on one switch. (*Ibid.*) The court found that this evidence showed that the tenant "assumed some responsibility for, and exercised control over, the means of lighting the approaches to the side entrance . . . [,]" and the sign, "which was under the control of [the tenant], served not only as an invitation to use the entranceway to the restaurant, but also to illuminate the general area." (*Ibid.*) The court thus concluded that the evidence supported a finding that the tenant had a duty to warn the plaintiff of the dangerous condition of the walkway. (*Ibid.*)

But absent evidence that a tenant exercised "actual" control of that portion of the premises where the plaintiff was injured, a tenant will not be held liable for the plaintiff's injuries where the lease does not confer a right of control. In *Both v. Harband* (1958) 164 Cal.App.2d 743 (*Both*), also cited with approval by *Alcaraz, supra,* 14 Cal.4th at p. 1159, the plaintiff, while walking on a sidewalk, was injured by a piece of material that fell from the exterior wall of a building, and she brought action against the owner and tenants of the building. (*Both, supra,* at p. 745.) The trial court instructed the jury that

9

the tenants owed the plaintiff a duty of care to maintain the premises in such a condition that they would not become dangerous to travelers outside the building. (*Id.* at p. 748.) Our colleagues in Division Two of this District reversed because the lease conferred no right of control upon the tenants over the building's exterior. (*Ibid.*) The appellate court further found, however, that there was evidence that the tenant had made alterations to the front of the building, had installed a sign upon it, and had contracted for the periodic cleaning of the windows. (*Ibid.*) The court held that this evidence warranted submission to the jury of the question whether the tenants "in fact exercised control over the portion of the building whose defective condition caused [the plaintiff's] injury." (*Ibid.*)

In sum, *Alcaraz*, *Johnston*, and *Both* show that to establish a tenant's duty of care where the lease does not confer upon him or her a right to control that portion of the land that caused the plaintiff's injury, there must be a showing that the tenant took some affirmative action to assume responsibility for the safe condition of that portion of the land. (See *Contreras v. Anderson* (1997) 59 Cal.App.4th 188, 200 (*Contreras*) [finding that under *Alcaraz*, "control" requires a showing "that the defendant took affirmative action to preclude or limit the . . . landowner's control of, or ability to control, its own property" or of a " 'dramatic assertion of a right normally associated with ownership or at least . . . possession' "].)

### 2. *Roger-McKeever Did Not Control the Walkway.*

Roger-McKeever argued in the trial court, as she does here, that she was not liable for Moses's injuries because they occurred on the walkway and walkway steps outside the condominium she leased, and she was not responsible for repairing or maintaining the walkway. Her supporting declaration stated that she leased the condominium from the owners, that

10

she had "no maintenance obligation for any areas outside the walls of the condominium, including the entryway steps[,]" and that she "had nothing to do with the design or construction of the entryway or the entry steps" and had "no involvement in any aspect of the maintenance and[/]or repair of any walkways or steps outside of the condominium [she] lease[s] from the owners." There was also evidence that she was "frustrated . . . that her landlord had not been responsive in repairing the [porch] light." Moses did not dispute those facts or present conflicting evidence.

On appeal, Moses does not contend that Roger-McKeever owned the walkway, that her lease conferred upon her a right to maintain and repair the outside lighting or the walkway steps, or that she assumed responsibility for the safe condition of the walkway. As discussed below, Moses's primary argument is that *despite* Roger-McKeever's lack of control over that area, Roger-McKeever owed her a duty of care because Roger-McKeever "impliedly adopted" the walkway by inviting Moses to her condominium. Nonetheless, Moses briefly makes two arguments regarding the issue of Roger-McKeever's control over the walkway which we address and reject in turn.

First, Moses contends that Roger-McKeever had control over the walkway, steps, and lighting because "she directed those she invited to the premises to use the steps and walkway in question, entitling invitees to consider it safe." But the evidence shows only that Roger-McKeever invited Moses to her condominium. There is nothing in the record that demonstrates that Roger-McKeever took affirmative action to "preclude or limit" the owners' ability to remedy the dangerous conditions in the walkway, or to assert a " 'right normally associated with ownership . . . .' " (*Contreras, supra,* 59 Cal.App4th at p. 200.) Under *Alcaraz* and *Contreras,* we thus cannot conclude that Roger-McKeever had control over the walkway merely

11

because she invited guests to her condominium, and those guests used the walkway to access her condominium. (See *Hamilton v. Gage Bowl, Inc.* (1992) 6 Cal.App. 4th 1706, 1713 [" 'An invitor may be liable for an injury, whether it occurs on his property or on a common passageway or on an adjacent sidewalk or street being used for his special benefit *if, and only if, the injury is caused by a dangerous condition, or unreasonable risk of harm, within the invitor's control'* "].)[2]

Moses next argues that Roger-McKeever had control over the entryway because she could have taken certain actions to prevent Moses's fall, including posting a warning sign, leaving out a portable lamp, and/or rescheduling the meeting for daytime. This argument lacks merit. To establish a duty of care under *Alcaraz*, it is insufficient to speculate that Roger-McKeever could have taken certain actions to prevent injury to Moses without showing that Roger-McKeever had actual control over the area where the injury occurred. "The mere possibility of influencing or affecting the condition of property owned or possessed by others does not constitute 'control' of such property." (*Donnell v. California Western School of Law* (1988) 200 Cal.App.3d 715, 725–726.) To hold otherwise would undermine the general rule that a defendant is not liable for failing to protect the

---

[2] Moses relies on *Hassaine v. Club Demonstration Services, Inc.* (2022) 77 Cal.App.5th 843 (*Hassaine*) and *Beauchamp v. Los Gatos Golf Course* (1969) 273 Cal.App.2d 20 (*Beauchamp*) in this context. We discuss both cases in greater detail below. For our purposes here, it is sufficient to state that neither *Hassaine* nor *Beauchamp* address the issue of whether a defendant had control over land he or she did not own or possess for purposes of establishing a duty of care.

potential victim if he or she did not contribute to creating the risk. (*Brown v. USA Taekwondo, supra*, 11 Cal.5th at p. 214.)[3]

As support for her argument, Moses relies on language in *Public Utilities Com. v. Superior Court* (2010) 181 Cal.App.4th 364, 378, that she claims defines "control" as the " 'power to prevent, remedy, or guard against' " a dangerous condition, and she argues that Roger-McKeever had control over the walkway under this definition because a warning or a portable lamp could have prevented or guarded against the allegedly dangerous conditions. The language quoted by Moses, however, is from *Low v. City of Sacramento* (1970) 7 Cal.App.3d 826 (*Low*), and *Low* does not stand for the proposition that a party who has no authority to remedy a dangerous condition has a duty of care to potential victims if he or she can take other actions to protect them against the dangerous condition. Rather, it concerned a plaintiff injured in a water-filled depression in a parking strip located outside a hospital owned and operated by the county. (*Id.* at p. 829.) The plaintiff brought her action against the city and the county, and the trial court instructed the jury that the strip was owned by the city and controlled by the county. (*Ibid.*) On appeal, the county argued that the judgment against it should be reversed. (*Ibid.*)

In considering whether the county "owned or controlled" the parking strip for purposes of Government Code sections 830 and 835, the statutes governing a public entity's liability for dangerous conditions on its property, the appellate court held that "[w]here the public entity's relationship to the

---

[3] There are exceptions to this rule that are inapplicable here, such as when the defendant and the plaintiff are in a special relationship or when the defendant " 'undertake[s] to come to the aid of another[.]' " (*Brown v. USA Taekwondo, supra*, 11 Cal.5th at p. 215.)

13

dangerous property is not clear, aid may be sought by inquiring whether the particular defendant had control, in the sense of power to prevent, remedy or guard against the dangerous condition; whether his ownership is a naked title or whether it is coupled with control; and whether a private defendant, having a similar relationship to the property, would be responsible for its safe condition." (*Low, supra*, 7 Cal.App.3d at pp. 833–834.) Although the city had an easement in the parking strip, the court found that "[l]ike a private abutting owner," the county had control over the strip based on evidence that it maintained the grassy surface of the strip, and "[i]n this activity it was subject only to the exercise of the city's control as owner of the public easement." (*Id.* at p. 834.) The court affirmed the judgment against the county based on its finding that the county had the power to both prevent the deterioration of the strip and to remedy it. (*Ibid.*) *Low* is therefore consistent with the standard for control set forth in *Alcaraz*, requiring evidence that the defendant took affirmative action to assume some responsibility for the condition of the area of injury. Here, there is no evidence that Roger-McKeever had taken any affirmative actions creating in her the power to prevent or remedy the alleged defects in the walkway or outside lighting.

Therefore, Moses has not shown that there is a triable issue of material fact demonstrating that Roger-McKeever owned, possessed or had control of the walkway, steps, or lighting for purposes of establishing a duty of care.

### 3. Implied Adoption under Hassaine

Unable to establish Roger-McKeever's actual control over the walkway, Moses asserts that Roger-McKeever nevertheless owed her a duty of care because she "impliedly adopted" the entryway by inviting Moses to use it to reach her condominium. As support for this argument, Moses cites *Hassaine, supra*, 77 Cal.App.5th 843. There, the plaintiff slipped and fell on a slippery

14

substance while shopping at a Costco warehouse. (*Id.* at p. 846.) She sued Costco and Club Demonstration Services (CDS), an independent contractor that operated food sample tables within the store. (*Id.* at pp. 846–847.) The trial court granted CDS's motion for summary judgment, finding that CDS did not owe the plaintiff a duty of care because CDS's contract with Costco limited its maintenance obligations to a 12-foot perimeter around each sample table, and the plaintiff's fall occurred outside that perimeter. (*Id.* at p. 847.)

The Fourth District reversed, finding that the trial court erred as a matter of law in concluding that the agreement between Costco and CDS limited the scope of CDS's duty of care. (*Hassaine, supra*, 77 Cal.App.5th at p. 849.) The court acknowledged that defendants generally do not have a duty of care where they did not contribute to the risk that the plaintiff would suffer the harm alleged. (*Id.* at pp. 851–852.) But it found that an exception to this rule applied because a special relationship exists between a business and their invitees, which gives rise to a duty of care by the business to " 'those who are lawfully on the premises' regarding risks that arise within the scope of their relationship." (*Ibid.*) The court held that "[i]rrespective of control, [this duty] also extends to all property the proprietor impliedly adopts and invites others to use." (*Ibid.*)

Turning to the case before it, the court found that the "question before us is whether CDS is part of the business enterprise–which by virtue of its special relationship to its customers bears an affirmative duty to protect them even if a third party created the peril–or is more akin to fellow Costco shoppers–who would owe no duty to warn even if they saw the liquid on the floor and could have prevented [the plaintiff's] fall." (*Id.* at p. 853.) The court concluded that "it is readily apparent that CDS was part of the business

15

enterprise and thus owed Costco shoppers a duty of reasonable care to provide a safe shopping facility." (*Ibid.*) CDS argued that it did not exercise "joint control" with Costco "to form a single business enterprise[,]" but the court nevertheless concluded that CDS "owed a duty of care by virtue of its special relationship with Costco customers." (*Id.* at p. 853, fn. 6.) "By positioning itself inside a Costco and offering product samples to Costco shoppers traversing store aisles, . . . CDS impliedly adopted Costco's premises and invited its sample customers to use the Costco aisles." (*Id.* at p. 856.) The court thus reversed the order granting CDS's summary judgment motion. (*Id.* at p. 858.)

We have not found, and the parties have not provided, any cases that extend *Hassaine*'s "impliedly adopted" rule to non-commercial contexts. Moreover, even in cases involving a commercial enterprise, "control" is still a required element where the business invitee was injured outside the business premises. (See, e.g., *Gray v. America West Airlines, Inc.* (1989) 209 Cal.App.3d 76, 80, 83–84 (*Gray*) [airline that leased ticket counter had no duty of care to passenger that tripped and fell in common concourse area adjacent to ticket counter because the airline had no control over the concourse area]; *Steinmetz v. Stockton City Chamber of Commerce* (1985) 169 Cal.App.3d 1142, 1146 (*Steinmetz*).) In *Steinmetz*, the decedent was fatally stabbed in a parking lot after attending a mixer hosted by the defendant business organization on its business premises. (*Id.* at p. 1144.) The defendant did not own, possess, or control the parking lot, and so the Third District found that the defendant did not owe any duty of care to the decedent while she was in the parking lot. (*Id.* at p. 1147.) The plaintiffs contended that the parking provided by the defendant was inadequate in light of the number of people it invited to the mixer, and therefore the defendant should

16

have foreseen that invitees would be forced to park in the nearby parking lot, and it had a duty to insure safe ingress and egress to its premises. (*Ibid.*) The court disagreed that the defendant had such a duty, finding that it would be "impossible to define the scope of any duty owed by a landowner off premises owned or controlled by him." (*Ibid.*)

Here, Moses argues that to impose a duty of care in this case, it is sufficient under *Hassaine* that Roger-McKeever gave her address to her invitees "without any other information about access to the premises" because it "would reasonably lead an invitee or visitor to approach the premises via the entryway . . . believing it is reasonably safe to use." But this case is closer to *Gray* and *Steinmetz* than to *Hassaine*. Like *Gray* and *Steinmetz*, the dangerous conditions here did not result from activities carried out in the course of defendants' commercial enterprise on the business premises, facts that were key to the *Hassaine* court finding a duty of care. Additionally, Moses has not shown that the allegedly dangerous conditions arose in the scope of a special relationship between her and Roger-McKeever such that Roger-McKeever had an affirmative duty to protect her against risks of harm that Roger-McKeever did not contribute to or create. (See *Melton v. Boustred* (2010) 183 Cal.App.4th 521, 536 [finding that plaintiffs did not allege facts supporting existence of any special relationship between homeowner and plaintiffs, who were homeowner's guests].) Imposing a duty of care in this case simply because Roger-McKeever invited Moses to her condominium, would essentially create a rule making all tenants responsible for hazardous conditions in surrounding public spaces, even when such spaces are not under their control. We cannot conclude on these facts that

17

Roger-McKeever had a duty to protect Moses from dangerous conditions she did not create on land she did not own or control.[4]

In sum, a residential tenant having no ownership or control over common areas leading to the tenant's dwelling place generally has no duty of care to protect invitees against the dangerous condition of those areas. Because Moses has not shown that a triable issue of material fact exists regarding Roger-McKeever's ownership or control over the common walkway, walkway steps, and lighting, she has not established error in the trial court's finding that Roger-McKeever did not owe Moses a duty of care under Civil Code section 1714.

## C.  *Negligence Per Se*

" 'Under the doctrine of negligence per se, the plaintiff "borrows" statutes to prove duty of care and standard of care.' " (*David v. Hernandez* (2014) 226 Cal.App.4th 578, 584.)  Citing the declaration of her expert mechanical engineer, Moses points out that the walkway steps violated applicable building codes.  Roger-McKeever argues, as she did in the trial court, that Moses's expert evidence does not raise a triable issue of material fact as to whether Roger-McKeever can be held liable for negligence per se based on the alleged building code violations.[5]  Moses does not invoke the

---

[4] The other case relied upon by Moses–*Beauchamp, supra*, 273 Cal.App.2d 20–is inapposite.  In that case, the area of injury, a concrete walk, was owned and possessed by the defendant business, and the issues before the court were whether the plaintiff had assumed the risk of walking across the concrete sidewalk in spiked golf shoes and whether the danger of doing so was obvious and well-known to her.  (*Id.* at pp. 34–35.)

[5] Roger-McKeever also argues that the trial court erred in overruling her objections to the admissibility of this expert evidence.  However, we do not have those objections in the record before us, so we have no way of determining whether the trial court abused its discretion.  In any event, the expert evidence–which concerns the nature of the alleged defects in the

18

doctrine of negligence per se in her opening brief, but she suggests in her reply brief that under this doctrine, the building code sets a standard of care separate from the common law duty of care. We do not consider issues raised for the first time in an appellant's reply brief. (*Habitat & Watershed Caretakers v. City of Santa Cruz* (2013) 213 Cal.App.4th 1277, 1292, fn. 6 ["Arguments presented for the first time in an appellant's reply brief are considered waived"].)

In any case, we agree with Roger-McKeever that Moses has not raised a triable issue of material fact showing that the negligence per se doctrine applies here. "While courts have applied negligence per se to building code violations, it has only been applied in limited situations[,]" such as where the defendant "played a professional role in the design or construction of the building." (*Jones v. Awad* (2019) 39 Cal.App.5th 1200, 1212 [finding the doctrine of negligence per se did not apply because the defendants "were simply homeowners and did not take part in any aspect of the design or construction of the garage step area" at issue].) Roger-McKeever's declaration satisfied her initial burden of showing that she played no role in the design or construction of the steps. Moses presented no evidence to the contrary, and thus she did not raise a triable issue of material fact regarding the applicability of negligence per se.

## D.    *Remaining Contentions under* Rowland

Finally, both parties contend that the duty of care factors set forth in *Rowland v. Christian* (1968) 69 Cal.2d 108 (*Rowland*) support their respective positions on the issue of whether Roger-McKeever owed Moses a

---

walkway steps and the issue of causation–does not affect the outcome of this appeal because we find that Roger-McKeever did not owe a duty of care to Moses in connection with the walkway.

duty of care in connection with the walkway.[6] The *Rowland* court identified several factors that, when balanced together, may justify a departure from the general duty of care embodied in Civil Code section 1714: "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland, supra*, 69 Cal.2d at p. 113.)

Moses argues that application of the *Rowland* factors shows that we should impose a duty on tenants to "warn and prevent by modest, inexpensive steps that would not intrude on others' duty to repair and/or maintain the entryway to a tenant's abode when the defendant is on actual or constructive notice of a dangerous condition." However, *Rowland* is not an independent source of duty but is merely a "guide to whether to create an exception to a duty otherwise established." (*Brown v. USA Taekwondo, supra*, 11 Cal.5th at p. 219; see *Soto v. Union Pacific Railroad Co.* (2020) 45 Cal.App.5th 168, 181, fn. 7 ["In light of our holding that Union Pacific had no duty to make the premises safe, we do not address the *Rowland* factors, which apply when a statutory duty of care is found to exist and the question

---

[6] *Rowland* "was partially superseded by statute on a different issue as stated in *Calvillo-Silva v. Home Grocery* (1998) 19 Cal.4th 714, 722, . . . disapproved on a different issue in *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853 . . . ." (*Smith v. Freund* (2011) 192 Cal.App.4th 466, 473, fn. 5.)

20

presented is whether public policy supports a departure from that general duty of care"].) Moses has not shown that there is an independent basis for imposing on Roger-McKeever a duty to protect against the dangerous condition of the walkway. Thus, the considerations articulated in *Rowland* cannot be applied to establish a duty of care here, and the trial court acted properly in granting Roger-McKeever's motion for summary judgment.

### III. DISPOSITION

The judgment is affirmed. Roger-McKeever to recover her costs on appeal.

SWOPE, J.*

WE CONCUR:


MARGULIES, ACTING P.J.


BANKE, J.


A164405P


---

* Judge of the San Mateo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

22

Alameda County Superior Court

Honorable Delbert C. Gee

Counsel:

Law Offices of John T. Shreiber and John T. Schreiber for Plaintiff and Appellant.

Donahue Davies, Michael E. Myers and William K. Blakemore for Defendant and Respondent.